UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
WICKERS SPORTSWEAR, INC.,

                 Plaintiff,                              **MEMORANDUM & ORDER**

    - against -                               04-CV-02334 (DRH) (JO)

GENTRY MILLS, INC.,

                 Defendant.
---------------------------------X

**APPEARANCES:**
**PINK ARBEIT BOYLE & NEMETH**
Attorneys for Plaintiffs
140 Fell Court, Suite 303
Hauppauge, New York 11788
By: Steven G. Pinks, Esq.

**NIXON PEABODY LLP**
Attorneys for Defendants
990 Stewart Avenue
Garden City, New York 11530
By: Joseph J. Ortego, Esq.

**HURLEY, District Judge:**

*INTRODUCTION*

      Plaintiff Wickers Sportswear, Inc., ("Plaintiff") brings the present suit against Defendant Gentry Mills, Inc., ("Defendant") alleging breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for the ordinary purpose, and negligence. Plaintiff asserts that this Court has personal jurisdiction over Defendant pursuant to the federal courts' diversity jurisdiction, 28 U.S.C. § 1332. Defendant challenges the Court's personal jurisdiction and venue and moves for dismissal of the Complaint

pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, to transfer venue to the Western District of North Carolina. For the reasons stated below, the Court GRANTS Defendant's motion to dismiss for lack of personal jurisdiction.

*FACTUAL AND PROCEDURAL SYNOPSIS*

Unless otherwise indicated, the Court derives the following factual summary from the complaint and the affidavits submitted by the parties in their motions.

Plaintiff is a corporation organized under the laws of New Hampshire, with its principal place of business in Commack, New York. Plaintiff manufactures recreational sportswear at its facility in New Hampshire and its sewing contractor in Ontario, Canada. Defendant is a corporation organized under the laws of North Carolina, with its principal place of business in Albemarle, North Carolina. Defendant dyes and finishes fabrics, that it then distributes to clothing manufacturers.

In October 2002, Plaintiff and Defendant entered into a business relationship. Defendant would provide the dyed and finished fabrics to Plaintiff's facilities in New Hampshire, Tennessee, or Ontario, where these fabrics would then be used to manufacture sportswear. Defendant never shipped finished goods to Plaintiff in New York.

Over the course of the relationship, from October 2002 to August 2004, Plaintiff sent 252 purchase orders for over 354 dye lots via fax from its Commack Headquarters to Defendant. The dye lots consisted of various fabric samples that amount to approximately 1/100th of a percent of the total fabric processed by Defendant for Plaintiff. The total amount of the purchase orders was "over $400,000." (Aff. of Anthony Mazzenga, dated October 25, 2004, ¶ 9.) That figure constituted less than 3% of Defendant's annual revenue. (Aff. of Alvaro Kraizel, dated

November 10, 2004 ("2d Kraizel Aff."), ¶ 25.) The dispute arose when the dyed fabrics that Defendant delivered to Plaintiff were deemed unacceptable because of excess "crocking," *i.e.*, the dye rubbed off the fabric.

*ANALYSIS*

Defendant moves to dismiss for lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2). In the alternative, Defendant requests, pursuant to Rule 12(b)(3), to dismiss the case on the grounds that venue in the Eastern District of New York is inappropriate. Should the Court conclude to the contrary, Defendant asks that the case be transferred to the Western District of North Carolina.

**I.     Personal Jurisdiction**

"On a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *see also, Grand River Enters. SixNations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Where, as here, a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *DiStefano*, 286 F.3d at 84; *see also*, *Grand River Enters.*, 425 F.3d at 165; *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Bank Brussels Lambert*, 171 F.3d at 784; *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d

Cir. 1997); *Ball v. Matallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-97 (2d Cir. 1990). "'[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor . . . .'" *Whitaker*, 261 F.3d at 208 (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)); *see, e.g.*, *DiStefano*, 286 F.3d at 84; *PDK Labs*, 103 F.3d at 1108; *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

With exceptions not relevant here, a district court sitting in a diversity action such as this may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits. FED. R. CIV. P. 4(k)(1)(A). Accordingly, resolution of a motion to dismiss for lack of personal jurisdiction made in the Eastern District of New York requires a two-step analysis. First, the Court must look to the long-arm statute of the forum state, in this instance New York. *See Whitaker*, 261 F.3d at 208; *see also, Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997); *Grand River*, 425 F.3d at 165 ; *DiStefano*, 286 F.3d at 84; *Bank Brussels*, 171 F.3d at 784; *Metropolitan Life*, 84 F.3d at 567. "'If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process.'" *Whitaker*, 261 F.3d at 208; *see also, Grand River Enters.*, 425 F.3d at 165; *Bank Brussels*, 171 F.3d at 784; *Metropolitan Life*, 84 F.3d at 567.

### A. General Jurisdiction

CPLR § 301, the New York general jurisdiction statute, states that a New York court "may exercise jurisdiction over persons, property, or status as might have been exercised heretofore." The statute incorporates all bases for jurisdiction previously recognized at common

law. *See Penny v. United Fruit Co.*, 869 F. Supp. 122, 125 (E.D.N.Y. 1994). Section 301 confers jurisdiction over a non-domiciliary defendant "on causes of action wholly unrelated to acts done in New York," when the defendant is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in the jurisdiction." *Ball*, 902 F.2d at 198. A corporation is "doing business," and is therefore "present" in New York and subject to personal jurisdiction, with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Hoffritz*, 763 F.2d at 58; *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917).

Courts examine a number of factors when determining whether a corporation is "doing business" in New York and thus subject to personal jurisdiction. These factors include: 1) whether the corporation has an office in New York; 2) whether the corporation has solicited business in New York; 3) whether the corporation has bank accounts or property in New York; and 4) whether the corporation has employees in New York. *See Hoffritz*, 763 F.2d at 58.

Defendant argues that there is no basis for general jurisdiction because it has never done business in New York with any permanence or continuity. (*See* Def.'s Mem. at 3.) Plaintiff counters that Defendant was "doing business" in New York for the purposes of the statute. Plaintiff premises its argument upon a number of "facts": (1) Defendant was engaged in a "continuous and systematic" business relationship with Plaintiff; (2) the parties had an agreement; (3) Defendant enjoyed the benefits of over $400,000 of business; and (4) after the crocking issue arose, Defendant shipped sixty testing samples that were analyzed by Plaintiff in Commack, New York. (*See* Opp'n at 7.) Plaintiff further contends, "upon information and

belief," that Defendant has regularly and continuously solicited, and continues to solicit business in New York through its independent agents. (*See id.*)

These allegations, however, do not satisfy the test for personal jurisdiction as articulated in *Hoffritz*. Plaintiff does not allege that Defendant has an office, bank account, property, or employees in New York, thus failing three of the four factors outright. With regard to the second factor, Plaintiff states that Defendant has solicited business in New York. This statement, however, is based upon "information and belief." Though the Court construes all facts in favor of Plaintiff because no evidentiary hearing was held, Plaintiff's conclusory allegations and argumentative inferences are not accepted as true. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 556 (S.D.N.Y. 2005) (noting that with regard to a 12(b)(2) motion to dismiss, a court does not accept conclusory allegations or draw argumentative inferences). Yet, even if the Court accepted Plaintiff's allegation, the outcome would be the same. Plaintiff would have only satisfied one of the four factors, and courts have explicitly held that "[a] defendant's solicitation of business alone cannot justify a finding of presence in New York pursuant to section 301, unless the solicitation 'is substantial and continuous, and [the] defendant engages in other activities of substance in the state.'" *Anderson v. Indiana Black Expo, Inc.*, 81 F. Supp. 2d 494, 500 (S.D.N.Y. 2000) (citations omitted).

Plaintiff has not alleged that Defendant's solicitation is "substantial and continuous," let alone that Defendant has engaged in any other activities of substance in the state of New York. Therefore, construing all of Plaintiff's allegations of fact, as distinct from their conclusory allegations of belief, as true, Plaintiff has failed to make out of a prima facie case of general jurisdiction.

### B. Specific Jurisdiction

Defendant then argues that this Court lacks specific jurisdiction because Defendant does not "transact business" in the state of New York for the purposes of §302(a)(1). (*See* Def.'s Mem. at 4.) In the absence of general jurisdiction, the Court must determine if specific jurisdiction exists. The ultimate issue is whether Defendant conducted activities in the forum such that it might "reasonably anticipate being haled into court" in New York. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Nevertheless, the inquest again begins with New York's Long-Arm Statute, then proceeds to Due Process considerations.

#### 1. Specific Jurisdiction Under § 302(a)(1)

Section 302 (a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . [1] transacts any business within the state or [2] contracts anywhere to supply goods or services in the state . . . ." N.Y. C.P.L.R. § 302(a)(1). Section 302(a)(1) is a "single act statute" and "proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Novak v. Overture Services, Inc.*, 309 F. Supp. 2d 446, 454 (E.D.N.Y. 2004) (citations omitted). Section 302(a)(1) has two prongs, either of which can form the basis for the exercise of personal jurisdiction over a non-domiciliary: the "transaction of business" prong and the "supplying goods or services prong." *See Bank Brussels Lambert*, 171 F.3d 779, 786 (2d Cir. 1999). Each prong is considered below. Throughout the analysis, the Court bears in mind that the test for jurisdiction under § 302(a)(1) is qualitative rather than quantitative and the inquiry should be designed to determine whether the "defendant

has engaged in some purposeful activity in this State in connection with the matter in suit." *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443 (1965).

### a. Transaction of Business Prong of § 302(a)(1)

Demonstrating that a defendant "transacted business" in New York for the purposes of § 302(a)(1) requires considerably less contact with New York than is necessary to establish that a defendant is doing business. *See Novak*, 309 F. Supp. 2d at 454. Section 302(a)(1) of the New York state long-arm statute provides that a court may exercise personal jurisdiction over any foreign defendant if that defendant "transacts any business within the state," and the claim arises from those business transactions. N.Y. C.P.L.R. § 302(a)(1). Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including: (1) "whether the defendant has an ongoing contractual relationship with a New York corporation"; (2) "whether the contract was negotiated or executed in New York"; (3) "whether the defendant visited New York for the purpose of meeting with the parties to the agreement"; and (4) "the choice of law clause in the agreement." *Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 265 (S.D.N.Y. 2005); *see also Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). None of the factors is dispositive. When deciding whether specific jurisdiction exists, the Court's decision turns on the totality of the circumstances. *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).

If, under the totality of the circumstances, a defendant purposefully availed itself of the privilege of conducting business in New York, thereby invoking the benefits and protections of its laws, the defendant "transacts business" within the meaning of Section 302(a)(1). *See Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.*, 675 F. Supp. 1439, 1443

(S.D.N.Y. 1987) (citations omitted). The remaining question is whether the transactions bear a "substantial relationship" or "articulable nexus" with the cause of action. *See Sunward Elecs.*, 362 F.3d at 23 (2d Cir. 2004) ("A cause of action 'arises out of' a defendant's transaction of business in New York for purposes of Section 302(a)(1) when there exists an 'articulable nexus' or a 'substantial relationship' between transactions occurring within the state and the cause of action sued upon.") (citations omitted). If such a substantial relationship exists, the Court may properly exercise personal jurisdiction over that individual pursuant to § 302(a)(1).

Defendant argues that the Court lacks specific jurisdiction pursuant to § 302(a)(1) because it did not "transact business" in New York in a manner consistent with § 302(a)(1). (*See* Def.'s Mem. at 4.) Plaintiff insists that Defendant's business activities in New York satisfy the statutory requirements. (*See* Pl.'s Opp'n at 10.)

Turning to the factors, it is undisputed that Defendant had an on-going contractual relationship with a New York corporation, *i.e.*, Plaintiff, satisfying the first factor. There also appears to be no dispute regarding the fourth factor, *i.e.* the choice-of-law clause of the contractual agreement. Plaintiff does not submit that their contractual relationship has any choice-of-law provisions. Therefore, Plaintiff has failed to establish the fourth factor.

As to the second factor–where the contract was negotiated–Plaintiff argues, "As set forth above, the parties entered into a series of contracts which were negotiated in New York by [Plaintiff] WICKERS and [Defendant] GENTRY." (Pl.'s Opp'n at 10.) Plaintiff's factual summary, however, makes no mention of Defendant ever traveling to the state of New York, nor does it include any indication that the negotiations occurred in New York. The relationship commenced with a phone call, and business proceeded via telephone, fax, and e-mail between

Plaintiff's Commack Headquarters and Defendant's headquarters in North Carolina. (*See id.* at 3-4; *see also* 2d Kraizel Aff., ¶ 12.) Such communications do not show that the contract was negotiated in New York. *See United Computer Capital Corp. v. Secure Prods., L.P.,* 218 F. Supp. 2d 273, 277 (N.D.N.Y. 2002) ("Where a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax, or mail with the New York party is generally insufficient to support a finding of the transaction of business in New York.").[1] Accordingly, this factor weighs against a finding of jurisdiction.

As for the third factor–whether Defendant visited New York for the purpose of meeting with the Plaintiff– the one mention of Defendant's President potentially traveling to New York concludes with the sentence, "Despite his assurance that he would attend the meeting, [Defendant's President] did not come to the Commack Headquarters and did not call to cancel." (Pl.'s Opp'n at 4.) At no point does Plaintiff cite one incident wherein Defendant visited the state of New York. As a result, the third factor weighs against a finding of jurisdiction.

In sum, the only evidence that Plaintiff has proffered to support jurisdiction is that Defendant had an ongoing relationship with a New York corporation. This factor alone is insufficient to establish personal jurisdiction. Thus, because Plaintiff has failed to establish even a prima facie case regarding the three of the four factors, there is no basis for the exercise of personal jurisdiction over Defendant pursuant to the "transacting business" prong of § 302(a)(1).

---

[1] Plaintiff contends that one of Defendant's employees solicited Plaintiff as a customer. (*See* Opp'n at 2.) Defendant disputes this assertion. (*See* Reply Mem. at 1-2 ("In fact, it was Wickers who came to North Carolina to solicit Gentry to perform the finishing and dyeing work.").) Though the Court accepts Plaintiff's factual allegation as true, that fact alone is insufficient to confer jurisdiction because Plaintiff does not further contend that Defendant actually traveled to New York to make the solicitation. Rather, Plaintiff admits that the solicitation occurred over the telephone. (*See* Opp'n at 2 ("The exclusive purpose of the call was to solicit WICKERS' business.").)

### b. Supplying Goods or Services Prong of § 302(a)(1)

Plaintiff also contends that Defendant's agreement to ship goods into New York is a basis for finding personal jurisdiction under § 302(a)(1). (*See* Pl.'s Opp'n at 10.) The second prong of § 302(a)(1), extending jurisdiction to defendants who "contract anywhere to supply goods or services in the state," was added to "'ease the plight of New York residents seeking to obtain jurisdiction over those outside its borders who may be deemed virtually or constructively to do business in this state.'" *Bank Brussels Lambert*, 171 F.3d at 789 (quoting *Waldorf Associates, Inc. v. Neville*, 533 N.Y.S.2d 182, 185 (1988)). "This provision captures cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York." *Id.* (citation omitted). "Thus, even if a defendant never enters the state to negotiate one of these contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-arm jurisdiction over a defendant who has minimal contacts with the state and who has entered a contract anywhere to supply goods or services in the state." *Id.* (citation omitted).

In applying this provision, courts may consider: (1) whether the purchase orders and other documents provide for shipment to New York; (2) whether the defendant collected New York sales tax in connection with the transaction; (3) whether the defendant solicited the contract in New York; (4) whether the defendant entered New York for purposes of performing the contract; and (5) any other factor showing that defendant voluntarily and purposefully availed itself of the privilege of transacting business in New York. *See Traver v. Officine Meccaniche Toschi Spa*, 233 F. Supp. 2d 404, 412 (N.D.N.Y. 2002) (citation omitted).

In the instant case, the purchase orders and other documents do not provide for shipment of the actual goods to New York. Instead, it is undisputed that Defendant merely shipped samples to Plaintiff's Commack Headquarters, while the goods that constituted the substance of the agreement were sent to factories in New Hampshire, Tennessee, and Ontario, Canada. (*See* Pl.'s Opp'n at 3 ("GENTRY would then send a 'submit sample' to WICKERS. If the sample passed inspection, WICKERS would communicate the approval to GENTRY and provide shipping instruction to WICKERS' facilities in New Hampshire, Ontario, Canada, or Selmer, Tennessee."); (Def.'s Mem. at 7.) In fact, each of the purchase orders submitted by Plaintiff are silent as to the destination of the goods; each order has the letters "TBA" beneath the "Ship To" caption. (*See* Pl.'s Opp'n, Ex. B.) Because the purchase orders do not provide for shipment of goods to New York, the first factor weighs against the exercise of personal jurisdiction.[2]

The second factor–whether Defendant collected New York sales tax with regard to the transaction–was not argued by either party and therefore plays no part in this Court's analysis. The third factor–whether Defendant solicited the contract in New York–is a matter of dispute, and for the purposes of this opinion the Court will assume that Defendant solicited the contract, weighing in favor of jurisdiction. (*Compare* Pl.'s Opp'n at 2 *to* Def.'s Reply at 1) . With regards to the fourth factor–whether Defendant entered New York to perform the contract–there is no evidence in the record to even suggest that Defendant ever entered the state of New York. In fact, Plaintiff admits that Defendant never traveled to New York: "[Defendant's President] agreed that he would travel to the Commack Headquarters to meet with [Plaintiff] to discuss the

---

[2]Crucial to the Court's analysis is the fact that Defendant merely sent samples, rather than the contracted-for goods, into the State of New York. Plaintiff does not contend that "samples"are considered "goods" for the purposes of § 302(a)(1).

problem. . . . Despite his assurances that he would attend the meeting [Defendant's meeting] did not come to the Commack Headquarters . . . ." (Pl.'s Opp'n at 4.) Thus, the fourth factor weighs against jurisdiction.

As a final consideration, the Court looks to whether Defendant ever purposefully availed itself of the privilege of transacting business in New York. *See Traver*, 233 F. Supp. 2d at 412.

Defendant argues that its shipments of samples to New York constituted a mere 1/100th of a percent of the total fabric processed by Defendant for Plaintiff. Defendant further argues that the total amount of the purchase orders was over $400,000, a figure that constitutes less than 3% of Defendant's annual revenue. According to Defendant, these numbers clearly demonstrate that it never purposefully availed itself of transacting business in New York. Plaintiff attempts to rebuff this argument based on the fact that the sample shipments, though constituting a small part of the total amount of fabric shipped, nevertheless consisted of over 300 shipments.

Plaintiff's argument focuses entirely on quantity, which has little place in the analysis of the fifth factor. *See Longines-Wittnauer Watch Co.*, 15 N.Y.2d at 443 (noting that the analysis is qualitative rather than quantitative). According to Plaintiff, the dispute arose when a retailer that had ordered a large shipment of undergarments from Plaintiff reported "crocking." (*See* Pl.'s Opp'n at 4). Thus, the present dispute did not involve the samples shipped to New York, but rather the fabrics that were shipped to New Hampshire, Tennessee, and Canada. The samples were for quality control purposes, but have nothing to do with the core of this dispute, which involved the finished dye-products that were shipped to several locations, none of them in New York.

Furthermore, these were samples and § 302(a)(1) was created to capture "cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York." *Bank Brussels Lambert*, 171 F.3d at 789 (quoting *Waldorf Associates, Inc. v. Neville*, 533 N.Y.S.2d 182, 185 (1988)). Plaintiff fails to assert that this dispute involved goods delivered or services to be performed in New York. The goods at issue were delivered to New Hampshire, Tennessee, and Canada and no services were performed by Defendant in New York. Therefore, the qualitative analysis weighs against a finding of jurisdiction.

After considering the quality of the shipments, along with the other factors, it is clear that § 302(a)(1) provides no basis for jurisdiction. There simply is no support for Plaintiff's contention that Defendant supplied goods or services into New York. Those goods and services were supplied to Plaintiff's factories in New Hampshire, Tennessee, and Ontario. Accordingly, there is no basis for specific jurisdiction over Defendant.[3]

### 2. Due Process Considerations: Minimum Contacts

Because the relevant long-arm statutes of New York provide no grounds for jurisdiction over Defendant, the Court need not proceed to a consideration of Defendant's Due Process rights.

## II. Venue

Because the Court lacks personal jurisdiction over the Defendant, the Court need not consider Defendant's motion to dismiss as it pertains to improper venue.

---

[3]Defendant also argues that there is no jurisdiction under § 302(a)(3). Plaintiff does not contend anything to the contrary. Accordingly, the Court will not address Defendant's arguments.

*CONCLUSION*

In accordance with the foregoing, Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
      January 23, 2006                                    /s/
                                                                    Denis R. Hurley
                                                                    United States District Judge